**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| COURTNEY GREEN,<br><br>   Plaintiff,<br>v.<br><br>EDWARD MALDONODO, GARY WRIGHT, JOHNNY WRIGHT, RICHARD FUREY, KOPACZ C/O ADMINISTRATIVE REMEDIES COORDINATOR,<br><br>   Defendants. | 3:17-cv-00957 (CSH)<br><br><br>AUGUST 17, 2017 |

**INITIAL REVIEW ORDER**

**Haight, Senior District Judge:**

  Plaintiff Courtney Green, currently incarcerated at Osborn Correctional Institution ("Osborn") in Somers, Connecticut, filed this complaint *pro se* pursuant to 42 U.S.C. § 1983. He has named as Defendants Warden Edward Maldonado, Deputy Warden Gary Wright, Dr. Johnny Wright, Health Services Administrator Richard Furey, and Correctional Officer Kopacz. Each Defendant is sued only in his or her individual capacity. Plaintiff contends that Defendants have discriminated against him based on his disability and subjected him to unconstitutional conditions of confinement.

**I. STANDARD OF REVIEW**

  Under section 1915A of title 28 of the United States Code, the Court must review all prisoner civil complaints against governmental actors, and dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1),(2). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. *Id.*

## II. FACTUAL ALLEGATIONS

The factual allegations contained in Green's Complaint are recounted herein, recited in the light most favorable to Green. On or about October 21, 2016, Green was transferred to Osborn. Doc. 1 ¶ 1. He was housed in "E-Unit, 24 cell," which was in emergency lockdown. *Id.* After three days, he was allowed to shower. *Id.* When he entered the shower, it was a small room with a grated steel door and a window that allowed him to see into the corridor and those in the corridor to see him. *Id.* The floor of the shower appears to be made of tile over a concrete floor that is always very wet and slippery. *Id.* There is nothing to hold onto in the shower to keep ones balance and prevent one from falling over. *Id.* There is also about a three foot wall that Green has to step over to enter and exit the shower. *Id.*

In the middle of November 2016, Green wrote to "counselor supervisor Long," the American Disabilities Act ("ADA") coordinator at Osborn through an inmate request regarding the shower seeking an accommodation. *Id.* ¶ 2. Long did not respond to Green's request for a shower accommodation. *Id.* On or about December 1, 2016, Green was sent to Dr. Wright regarding an unrelated issue to the claim of ADA discrimination; however, during the meeting Green asked for assistance in obtaining accommodations for a shower in the housing unit that would not require him to step over the wall to get in and out of the shower. *Id.* ¶ 3. Dr. Wright explained that he was unaware of the wall and inquired as to why Green needed the accommodations. *Id.* Green showed Dr. Wright his surgically repaired leg and ankle, which are also arthritic. *Id.* Dr. Wright agreed that Green's leg was impaired and issued him a bottom bunk pass. *Id.* Dr. Wright informed Green that he did not meet the criteria or requirements for specialized housing where there are handicap-accessible showers despite admitting that Green had a physical impairment. *Id.* ¶ 4. Green asked about the requirements and Dr. Wright expressed that an inmate must be wheelchair bound, missing a limb, on crutches, or require the use of a cane to obtain the specialized housing. *Id.* Dr. Wright informed Green that there were inmates in far worse shape than him. *Id.* Dr. Wright never examined or treated Green's leg or ankle and did not log any complaint about Green's leg or ankle. *Id.* ¶ 5.

On or about December 5, 2016, Green wrote to his unit counselor McMillian via an inmate request, seeking a facility transfer to accommodate his needs for a shower due to his physical impairment. *Id.* ¶ 6. McMillian responded that Green had been submitted for a facility transfer, which was subsequently denied. *Id.* On or about December 6, 2016, Green filed an appeal based on Long's failure to reply to his request in a timely manner, violating Administrative Directive

3

9.6(6)(C). *Id.* ¶ 7. Shortly thereafter, Green wrote to Deputy Warden Gary Wright via an inmate request seeking a change in housing for a unit that had a shower without the three foot wall. *Id.* ¶ 8. Deputy Warden Wright did not respond to Green's complaint, which is a common practice at Osborn. *Id.* On December 15, 2016, Green requested reasonable accommodations by filing "CN 101902 form pursuant to CT Department of Corrections." *Id.* ¶ 9.

On or about January 10, 2017, Green's ADA appeal was returned by Correctional Officer Administrative Remedies Coordinator Kopaz. *Id.* ¶ 10. The disposition reflects the wrong year in its date by mistake. *Id.* ¶ 11. The reason for the rejection of the appeal was because an appeal can be filed only when a decision by the ADA coordinator had been made. *Id.* Because no such decision had been made at the time of the appeal, Green's appeal was rejected. *Id.* Kopaz signed Green's ADA form explaining that he had exhausted his Administrative Remedies even though he never received a formal decision. *Id.* Green believes this was done to "create impediments" in his request to obtain remedies and accommodations. *Id.* Warden Maldonado also signed Green's ADA appeal. *Id.*

Shortly thereafter Green saw Captain Manning, the first shift commander, during a tour of B-Unit, Green's current housing unit. Doc. 1 ¶ 12. He asked Manning if Kopacz was trained or certified in ADA compliance and Manning told him that Kopacz was not; only Captain Colon and Long are trained and certified in ADA compliance. *Id.* On February 1, 2017, Green received his "CN 101901 form" and it was denied because Green did not meet the requirements for specialized housing based on Dr. Wright's review. *Id.* ¶ 13. Deputy Warden Wright and Richard Furey signed this declination. *Id.* In the later part of February 2017, Green became aware of a December 30, 2016 email regarding his ADA accommodations. *Id.* ¶ 14. In the email, which was between Furey,

4

Elizabeth Mahar, and Dr. Wright, Furey emailed Mahar saying that Green should be seen by a doctor to determine if he needs a handicapped shower. *Id.* Furey remarked that Green "[c]laims he has a rod in his leg that does not allow him to step over the shower wall" and that "[t]his is an ADA request so once seen, contact Devonia Long, as she has to close out the ADA accommodation form." *Id.* Dr. Wright later responded saying "I have already seen this inmate and he questioned me in regards to ADA accommodation. I informed him that he did not meet the criteria for ADA accommodations. This was noted in his chart because it was informal, oh by the way inquiry. If necessary, I can make a formal documentation in his chart." *Id.* Green is currently still subjected to these "dangerous shower conditions," which have forced "him to walk on very slippery surfaces and step over a 3ft wall to participate in the benefits of the services, programs or activities of a public entity (shower)." *Id.* ¶ 15.

Green's Complaint contains three specific causes of action. Doc. 1 at 5-6. However, the Court will construe his causes of action liberally to raise the strongest claim suggested. Green asserts a § 1983 claim based on the negligence and actions of each of the Defendants in failing to accommodate his serious needs in violation of the Eighth Amendment. *Id.* at 6. According to Green, he was deprived of the "minimal civilized measure of life's necessities (shower accommodations)" by Defendants and this violated his right to be free from cruel and unusual punishment. *Id.* at 5. Green also asserts that he been discriminated against based on his disability/impairment and has not been provided a reasonable accommodation for his medical needs. *Id.* at 5. He asserts this claim against each of the Defendants. *Id.* Although he labels it a § 1983 claim based on a violation of his Eighth Amendment rights, his allegations are more properly construed as an ADA violation claim, 42 U.S.C. § 12101, *et seq.* Finally, he asserts a § 1983 claim

based on the denial of his rights under the Fourteenth Amendment because he was denied equal treatment and discriminated against because of his disability/impairment. *Id.* at 6. He also asserts this claim against each of the Defendants. *Id.* Green seeks declaratory relief, compensatory and punitive damages as well as reasonable attorneys's fees and costs. *Id.* at 7.

## III. DISCUSSION

The Court will assess each of Green's three claims to determine whether any claim "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or a claim that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1),(2). The Court will address each claim.

### A. Eighth Amendment Claim

The Eighth Amendment's prohibition on cruel and unusual punishment includes a prohibition on inhumane conditions of confinement. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). The standard for an inhuman conditions claim contains both an objective and a subjective component: objectively, "the prison officials' transgression" must be "'sufficiently serious'" and subjectively, "the officials [must have] acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.* with 'deliberate indifference to inmate health or safety.'" *Id.* at 185 (quoting *Farmer*, 511 U.S. at 834 ). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Such needs include

6

the "essential bodily functions of toileting and showering." *Id.* at 336 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted). "Claims of such deprivations are generally found to be sufficiently grave when they involve the possibility of serious pain or injury." *Montalvo v. Koehler*, No. 90 Civ. 5218 , 1992 WL 396220, at *4 (S.D.N.Y. Dec. 21, 1992) (collecting cases). Prison officials also cannot expose prisoners to conditions that may pose an unreasonable risk of serious damage to the prisoners' future health. *Alster*, 745 F. Supp. 2d at 335 (citing *Phelps*, 308 F.3d at 185).

Here, construing Green's allegations liberally, he alleges that he has been forced to shower in unsafe conditions given his current health and surgically repaired leg.[1] The manner in which he has been forced to shower has repeatedly subjected him to the possibility of serious injury. He is essentially alleging that he is being exposed to conditions that "'pose an unreasonable risk'" of serious injury to him given his current injuries and disability. *See Alster*, 745 F. Supp. 3d at 335 (quoting *Phelps*, 308 F.3d at 185). These are sufficient allegations to establish the objective element of an Eighth Amendment claim at this stage. *See Montalvo*, 1992 WL 396220, at *4.[2]

---

[1] The Court recognizes that the conditions of the shower, i.e. the standing water or slippery surface, alone would not give rise to an Eighth Amendment claim. *See Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) (collecting cases) (holding that alleged standing water in a shower area does not deprive an inmate of a basic human need and, thus, cannot give rise to a constitutional violation). Here, however, Green has claimed that he has a disability which is exacerbated by the set up and conditions of the shower, placing him repeatedly at risk of serious harm.

[2] Absent from Greene's allegations are any details on whether he has in fact been injured because of how he has been forced to use the shower or whether he has been deprived of the ability to shower altogether. Such allegations, however, are not necessarily required to state an Eighth Amendment claim. *See Montalvo*, 1992 WL 396220, at *4 n.6 ("However, actual injury is not necessary to show that a policy exhibits reckless indifference to [plaintiff's] safety." (citing *Rivera v. Dyett*, No. 88 Civ. 4707, 1992 WL 233882, at *7 (S.D.N.Y. Sept. 10, 1992)). Related to other claims, Green will have the opportunity to amend his Complaint. To the extent he has in fact been

To establish the subjective element of an Eighth Amendment claim, a plaintiff must demonstrate each of the individual defendants "act[ed] with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted). Although Green's allegations are limited, construing them liberally, he does allege that, at different points and through different means, he made each of the Defendants aware of his disability and the conditions as well as the specific problem presented by the shower. He sought an ADA accommodation and was denied. He appealed that decision. According to the allegations, each of the Defendants had some role in keeping Green from accessing a handicap shower or other accommodation for his disability. Although at one point he phrases the claim as "negligence" on part of the Defendants, he also alleges that they took these actions deliberately and in the face of evidence of his disability and/or in wilful ignorance. These allegations are sufficient at this stage. *See, e.g.*, *Grullon v. City of New Haven*, 720 F.3d 133, 140-41 (2d Cir. 2013) (holding that where a *pro se* prisoner plaintiff alleges that he informed a supervisor about an ongoing and continuing unconstitutional prison condition that the supervisor personally allowed to continue, a claim for supervisory liability may survive dismissal at the Rule 12(b)(6) stage and be subject to discovery).

In summary, Green has stated an Eighth Amendment claim against each of the Defendants for exposing him to conditions that posed, and continue to pose, and unreasonable serious risk of harm to him given his disability.

**B.     ADA Claim**

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title

---

injured or deprived of the use of the shower, he should explain such instances in detail.

II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). However, "[t]he ADA does not provide for individual capacity suits against state or city officials." *Alster*, 745 F. Supp. 2d at 337 (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)). Here, Green has chosen only to sue each Defendant in his or her individual capacity. Accordingly, to the extent Green has attempted to plead any ADA individual capacity claims, such claims must be dismissed.

Green could possibly assert a valid ADA claim against the appropriate state entity, the Connecticut Department of Correction, which is not currently a defendant in this action.[3] However, "to establish a violation under the ADA, the plaintiff[] must demonstrate that (1) [he] is [a] qualified individual[]' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff [ ] w[as] denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or w[as] otherwise discriminated against by defendants, by reason of plaintiff['s] disabilities." *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). The Court will allow Plaintiff the opportunity to amend his Complaint to add the state entity defendant and

---

[3] The Court notes that where, as would likely be the case here, when "a plaintiff may proceed on his ADA claims against the State entity directly, courts in this Circuit 'dismiss [ ] the official capacity claims because they [are] redundant of the claims against the government entity." *Alster*, 745 F. Supp. 2d at 339 (quoting *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007)). Moreover, other courts in this Circuit have held that official capacity claims are not viable under the ADA. *Fox*, 497 F. Supp. 2d at 451 (collecting cases).

9

properly assert an ADA claim against it. The plaintiff must do so by September 15, 2017. The Court notes, however, that in order to show that a plaintiff is a "'qualified individual with a disability,' the plaintiff must establish that he has a physical or mental impairment and provide evidence that such impairment 'substantially limits one or more of that person's major life activities.'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 722 (2d Cir. 1994)). Plaintiff, at present, has not described his impairment to the extent that this Court could conclude he has adequately pled that he is a qualified individual under the ADA. If Plaintiff amends his Complaint, he must add allegations supporting this element, and the other two elements as well, of his ADA claim.[4]

**C. Equal Protection Claim**[5]

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Shariff v. Coombe*, 655 F. Supp. 2d 274, 302 (S.D.N.Y. 2009) (quoting *Phillips v. Girdich*, 408 F.

---

[4] In addition, Plaintiff can only make an ADA claim if the conduct he complains of also violates the Eighth Amendment. *See Darvie v. Countryman*, No. 9:08-cv-0715, 2010 WL 3724122, at *4-5 (N.D.N.Y. April 26, 2010) (citing *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 411-13 (S.D.N.Y. 2006)), *adopted by* 2010 WL 3724020 (N.D.N.Y. Sept. 15, 2010). Because the Court has found that Plaintiff's Eighth Amendment claim should be allowed to proceed, this would not pose an issue currently to Plaintiff. However, if this claim is unfounded, any ADA claim will fail as well.

[5] In his Complaint Green phrases this claim as a "denial of due process" but goes on to allege that he was not treated in an "equal" manner and discriminated based on his disability. The facts, as currently plead in his Complaint, even when liberally construed, do not appear to support a cognizable due process claim. Thus, the Court analyzes this claim as an equal protection claim and not a due process claim.

3d 124, 219 (2d Cir. 2005)) (internal quotation marks omitted). "A plaintiff also must demonstrate that any disparity in treatment cannot withstand the appropriate level of scrutiny." *Id.* The disabled, however, are not a suspect or quasi-suspect class, and therefore, rational basis scrutiny—that the disparity be rationally related to a legitimate governmental purpose—applies. *Id.* Additionally, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "The standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are 'prima facie' identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)), *overruled on other grounds by Appel v. Spiridan*, 531 F.2d 138, 139-40 (2d Cir. 2008).

Here, Green does not appear to allege that differential treatment has been imposed upon him; instead, he is alleging that he was denied a reasonable accommodation for his disability.[6] He fails to point to anyone similarly situated who received different treatment, and does not allege that others suffering from his condition were granted the accommodation. *See Medina v. Skowron*, 806 F. Supp. 2d 647, 652-53 (W.D.N.Y. 2011) (dismissing an equal protection claim where a plaintiff had not identified any similarly situated inmates treated differently from him). Rather, his allegations reveal that Dr. Wright did not believe he qualified for the accommodation even though Dr. Wright granted that his condition would require being situated on a lower bunk. Green does not allege any facts from which the Court could conclude that Dr. Wright, or the other individual defendants,

---

[6] Moreover, the Supreme Court has made clear that the denial of a reasonable accommodation cannot form the basis of an Equal Protection claim so long as the actions toward the inmate were rational. *See Coombe*, 655 F. Supp. 2d at 302.

11

sought to treat him differently on account of his disability or without any rational basis for doing so. *See Darvie*, 2010 WL 3724122, at *4 (dismissing an equal protection claim where a plaintiff had not "alleged facts plausibly suggesting or produced evidence raising a triable issue of fact that Defendants' decision to transfer him was arbitrary, motivated by animus, or motivated by impermissible considerations."). Because Green has failed to identify any similarly situated individuals who were treated differently from him, let alone any with an "extremely high" level of similarity between them, Green's equal protection claim must be dismissed. *See Medina*, 806 F. Supp. 2d at 652-53.

## IV. CONCLUSION

Following this Court's review of Plaintiff's Complaint, and for the reasons stated, the Court makes this Order:

1. Plaintiff's Complaint is **DISMISSED** to the extent it seeks to plead (a) any claim pursuant to the ADA against the Defendants in their individual capacities; and (b) any § 1983 claims based on the Equal Protection Clause. Those dismissals are made pursuant to 28 U.S.C. § 1915A(b).

2. Plaintiff's Complaint § 1983 claims based on a violation of the Eighth Amendment **WILL PROCEED** against each named Defendant in their individual capacities.

3. To the extent that Green can remedy the failures in his Complaint noted by the Court in this Ruling and assert an ADA claim against the appropriate state entity, the Connecticut Department of Correction, Green may file an Amended Complaint seeking to add that specific claim and the appropriate defendant. Green must do so by **September 15, 2017**. If Green does not, the case will proceed on Green's § 1983 claims based on a violation of the Eighth Amendment.

For the proper governance of the case, the Court also makes these additional Orders:

4. The Clerk shall verify the current work address of Defendants Warden Edward Maldonado, Deputy Warden Gary Wright, Dr. Johnny Wright, Health Services Administrator Richard Furey, and Correctional Officer Kopacz with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the Court the status of that waiver request on the **thirty-fifth (35th) day** after mailing. If any Defendant fails to return the waiver request, then the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

5. The Clerk shall send a copy of this Order to Plaintiff. The Clerk shall also send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

6. Defendants shall file their response to the Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

7. Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the Court.

8. All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

9. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

10. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

11. Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
**August 17, 2017**

       */s/ Charles S. Haight, Jr.*
       **CHARLES S. HAIGHT, JR.**
       **SENIOR UNITED STATES DISTRICT JUDGE**