# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COURTNEY GREEN, | |
| Plaintiff, | 3:17-cv-00957 (CSH) |
| v. | |
| EDWARD MALDONADO, CT DEPARTMENT OF CORRECTION, JOHNNY WRIGHT, GARY WRIGHT, KOPACZ, | **JUNE 6, 2018** |
| Defendants. | |

## RULING ON MOTION TO DISMISS

**Haight, Senior District Judge:**

Plaintiff Courtney Green ("Plaintiff" or "Green"), currently incarcerated at Osborn Correctional Institution ("Osborn") in Somers, Connecticut, has filed a Second Amended Complaint *pro se*, naming as Defendants Warden Edward Maldonado, Deputy Warden Gary Wright, Dr. Johnny Wright, Correctional Officer Kopacz, and the Connecticut Department of Correction ("DOC"), (collectively, "Defendants").[1] Green contends that Defendants have discriminated against him on the basis of his disability and have subjected him to unconstitutional conditions of confinement. Defendants move to dismiss Plaintiff's Second Amended Complaint, pursuant to Rule 12(b)(6) of

---

[1] Plaintiff's original Complaint was the subject of an Initial Review Order ("IRO"), pursuant to 28 U.S.C. § 1915A, issued by this Court on August 17, 2017. Doc. 10. Familiarity with the IRO is assumed. In accordance with the IRO, Plaintiff filed an Amended Complaint on September 25, 2017. Doc. 16. The Amended Complaint failed to name each Defendant in the caption; pursuant to Rule 10 of the Federal Rules of Civil Procedure, the Court dismissed it without prejudice. On October 6, 2017, Plaintiff filed the operative Second Amended Complaint, naming Maldonado, Dr. Wright, Deputy Warden Wright, Kopacz and the DOC as Defendants. Doc. 19.

the Federal Rules of Civil Procedure. Plaintiff resists the motion. This Ruling resolves it.

## I.    FACTUAL BACKGROUND

The factual allegations contained in Green's Second Amended Complaint are recounted herein, recited in the light most favorable to Green.

On or about October 21, 2016, Green was transferred to Osborn. Doc. 19 ¶ 1. He was housed in "E-Unit, 24 cell," which was in emergency lockdown. *Id.* After three days, he was allowed to shower. *Id.* The shower is in a small room with a grated steel door, and a window that allows Green to see out and allows those in the corridor to see in. *Id.* The floor of the shower appears to be made of tile over a concrete floor; it is always very wet and slippery. *Id.* There is nothing to hold onto in the shower to keep one's balance and to prevent one from falling. *Id.* To enter and exit the shower, Green has to step over a three feet high wall.

In the middle of November 2016, Green sent an inmate request to Counselor Supervisor Long, the Americans with Disabilities Act ("ADA") coordinator at Osborn, seeking an accommodation for the shower. *Id.* ¶ 2. On or about December 1, 2016, Green was sent to Dr. Wright regarding an unrelated issue; however, during the meeting Green asked for assistance in obtaining accommodations in the form of a transfer to a housing unit where he would not be required to step over the wall to get in and out of the shower. *Id.* ¶ 3. Dr. Wright said that he was not aware that there was a wall in the shower, and inquired as to why Green needed the accommodations. *Id.* Green showed Dr. Wright his surgically repaired leg and ankle, which are also arthritic. *Id.* Dr. Wright agreed that Green's leg was impaired and issued him a bottom bunk pass. *Id.* Dr. Wright then informed Green that he did not meet the criteria or requirements for specialized housing – where there are handicap-accessible showers – despite his admission that Green had a physical impairment.

*Id.* ¶ 4. Green asked about the requirements and Dr. Wright responded that to obtain specialized housing, Green must be in a wheelchair, using a cane or crutches, or missing a limb. *Id.* Dr. Wright informed Green that there were inmates in far worse shape than him. *Id.* Dr. Wright never examined or treated Green's leg or ankle and did not log or record Green's inquiry, as it was informal. *Id.* ¶ 5.

On or about December 5, 2016, Green wrote to his unit counselor McMillian via an inmate request, seeking a facility transfer to accommodate his needs for a shower due to his physical impairment. *Id.* ¶ 6. McMillian responded that Green had been submitted for a facility transfer, which was subsequently denied. *Id.* On or about December 6, 2016, Green filed an appeal based on Long's failure to reply to his request in a timely manner, contending that Long violated Administrative Directive 9.6(6)(C). *Id.* ¶ 7. Shortly thereafter, Green wrote to Deputy Warden Gary Wright via an inmate request seeking a change in housing for a unit that had a shower without a three foot wall. *Id.* ¶ 8. Deputy Warden Wright did not respond to Green's complaint, which is a common practice at Osborn. *Id.* On December 15, 2016, Green requested reasonable accommodations by filing a CN 101902 form. *Id.* ¶ 9.

On or about January 10, 2017, Green's ADA appeal was returned by Administrative Remedies Coordinator Kopacz. *Id.* ¶ 10. The disposition was dated incorrectly by a year. *Id.* The reason provided for the rejection of the appeal was that "per A.D. 9.6," an ADA decision appeal can be filed only when a decision by the ADA coordinator had been made. *Id.* Because no such decision had been made at the time of the Green's appeal, it was denied. *Id.* Kopacz signed Green's ADA form explaining that he had exhausted his Administrative Remedies even though Green had never received a formal decision. *Id.* This was done to "create impediments" in his request to obtain remedies and accommodations. *Id.* Warden Maldonado also signed Green's ADA appeal. *Id.*

Shortly thereafter, Green saw Captain Manning, the first shift commander, during Manning's tour of the B-Unit. Doc. 1 ¶ 11. Green asked Manning if Kopacz was trained or certified in ADA compliance and Manning answered that Kopacz was not; only Captain Colon and Long are trained and certified in ADA compliance. *Id.* On February 1, 2017, Green received the denial of his "CN 101902" form. *Id.* ¶ 12. The form was denied because, based on Dr. Wright's review, Green did not meet the requirements for specialized housing. *Id.* ¶ 12. Deputy Warden Wright and Richard Furey signed this declination. *Id.*

In the later part of February 2017, Green became aware of a December 30, 2016, email conversation between Furey, Elizabeth Mahar and Dr. Wright regarding his ADA accommodations request. *Id.* ¶ 13. In the email, Furey stated that Green should be seen by a doctor to determine if he needs a handicap-accessible shower. *Id.* Furey remarked that Green "[c]laims he has a rod in his leg that does not allow him to step over the shower wall" and that "[t]his is an ADA request so once seen, contact Devonia Long, as she has to close out the ADA accommodation form." *Id.* Dr. Wright later responded, stating that "I have already seen this inmate and he questioned me in regard to ADA accommodation. I informed him that he did not meet the criteria for ADA accommodations. This was not noted in his chart because it was informal, oh by the way inquiry. If necessary I can make a formal documentation in his chart." *Id.*

Green then contacted the U.S. Department of Justice, Civil Rights Division to assist him in obtaining shower accommodations. *Id.* ¶ 14. The assistant United States attorney assigned to the case was informed by Colleen Gallagher, the Director of Medical Services for DOC, that Green had a shower pass that would allow him to shower in the handicap-accessible showers available in the medical unit. *Id.* Gallagher told the assistant United States attorney that there were handrails installed

in the shower in the B-Block housing unit, where Green resided. *Id.* This information was false. *Id.*

In mid-March of 2017, Green wrote to Gallagher by inmate request. *Id.* ¶ 15. He informed her that he did not have a shower pass, nor were there handrails in the shower in Green's housing unit. *Id.* Gallagher visited Green at Osborne one week later. *Id.* She toured Green's housing unit, and observed that there were no handrails in the showers. *Id.* Gallagher said, "wow they lied to me!" *Id.* Gallagher also apologized to Green for the misinformation she had received regarding the shower pass. *Id.* A different prisoner with the same last name, who was blind, had been issued a medical shower pass. *Id.* That prisoner had been confused for Green. *Id.*

As Gallagher and Green toured the shower room, Green explained the nature of his injury. *Id.* ¶ 16. He told her that he had been hit by a car in 2008, resulting in a broken left leg, and requiring an ankle effusion that left Green with very limited range of motion in his ankle; a limp; and extreme stiffness. *Id.* Green's daily activities are affected by his impediment, such as walking and stepping over barriers. *Id.* Green demonstrated how he gets into the shower when it is not crowded. *Id.* He sits down on the wall and then must manually lift his left leg up and over the wall. *Id.* He repeats this process to exit the shower. *Id.* Green has been deprived of a shower on a number of occasions. *Id.* When there is overcrowding, such as after gym recreation, he cannot run to the shower like the other inmates, due to his impairment. *Id.* If Green wanted to shower on those days, he would have to miss the gym recreation. *Id.*

A month and a half after that meeting, Green reached out again to Gallagher by sending an inmate request. *Id.* ¶ 17. Gallagher did not respond, but Green was then moved to the J specialized housing unit. *Id.* The J-Unit is a medical unit; the shower is handicap-accessible. *Id.* Green is presently housed in the J-Unit and "is now being allowed to participate in the benefits of programs

or services or activities from the CT Department of Correction who receive federal funding for their public entities programs." *Id.* ¶ 18.

## II.    STANDARD OF REVIEW

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles." *Id.* at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012)

(quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally." (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to raise the strongest arguments [they] suggest[ ].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

## III.   DISCUSSION

The IRO permitted Plaintiff's § 1983 claims based on a violation of the Eighth Amendment

to proceed against the named Defendants in their individual capacities. *See* Doc. 10 at 12. The IRO also granted leave to Plaintiff to file an Amended Complaint, to assert an ADA claim against the Connecticut DOC. Pursuant to 28 U.S.C. § 1915A, The Court dismissed any claims against the individual Defendants in their individual capacities made pursuant to the ADA, and any § 1983 claims based on the Equal Protection Clause.

Plaintiff's Second Amended Complaint asserts seven causes of action. Plaintiff alleges a section 1983 claim based on a violation of the Eighth Amendment against Defendants Dr. Wright, Deputy Warden Wright, Maldonado, and Kopacz; a claim against the DOC pursuant to the ADA; and several claims against the individual Defendants pursuant to the ADA. Plaintiff names the Defendants in their individual and their official capacities. Consistent with the directive in the IRO, the Second Amended Complaint asserts several new factual allegations.

The present motion seeks to dismiss the Second Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff's Eighth Amendment section 1983 claims should be dismissed, as Plaintiff has not alleged sufficient facts to show that Defendants were deliberately indifferent to Plaintiff's health and safety. Defendants argue that without a plausible Eighth Amendment claim, Plaintiff's ADA claims fail. Defendants also assert that Plaintiff has failed to allege sufficient facts that would show that he suffers from a disability, as required by 42 U.S.C. § 12102(2)(A). Finally, Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims. The Court will address these arguments in turn.

## A.     Official Capacity Claims

As an initial matter, to the extent Green seeks money damages from the Defendants in their

official capacities pursuant to section 1983, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Green's Second Amended Complaint names the individual Defendants in their individual and official capacities, and Green does not seek injunctive relief. "Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment." *Auguste v. Dep't of Corr.*, 424 F. Supp. 2d 363, 367 (D. Conn. 2006) (citations omitted). "[T]o the extent that a State official is sued in his official capacity, such a suit is deemed to be a suit against the State, and the official is entitled to invoke the same Eleventh Amendment immunity as that belonging to the State." *DeLoreto v. Ment*, 944 F. Supp. 1023, 1031 (D. Conn. 1996). "However, state officials sued in their individual capacities are not immune from personal liability pursuant to § 1983." *Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292, 299 (D. Conn. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)), *adhered to on reconsideration*, 246 F.R.D. 408 (D. Conn. 2007). Accordingly, any claims brought against Defendants in their official capacities pursuant to § 1983 in this matter are properly dismissed, as Green does not seek injunctive relief.[2]

**B.     Eighth Amendment Claim**

The Eighth Amendment's prohibition on cruel and unusual punishment includes a prohibition on inhumane conditions of confinement.  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)

---

[2] Although the Defendants did not raise this point in their motion to dismiss, the Court has authority to raise this issue and dismiss these claims *sua sponte*. *See Saxon v. Attica Med. Dep't*, 468 F. Supp. 2d 480, 484 n.3 (W.D.N.Y. 2007) (noting the court's authority to dismiss a claim on the ground of Eleventh Amendment immunity as it affects subject matter jurisdiction, and as pursuant to the Court's authority under 28 U.S.C. § 1915A to *sua sponte* dismiss prisoner claims that fail to state a claim upon which relief may be granted (collecting cases)).

(citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). The standard for an inhumane conditions claim contains both an objective and a subjective component: objectively, "the prison officials' transgression" must be "sufficiently serious" and subjectively, "the officials [must have] acted, or omitted to act, with a sufficiently culpable state of mind, *i.e.* with deliberate indifference to inmate health or safety." *Id.* at 185 (quotation marks and citation omitted). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Thus, prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Such needs include the "essential bodily functions of toileting and showering." *Id.* at 336 (quotation marks and citation omitted). "Claims of such deprivations are generally found to be sufficiently grave when they involve the possibility of serious pain or injury." *Montalvo v. Koehler*, No. 90-CV-5218, 1992 WL 396220, at *4 (S.D.N.Y. Dec. 21, 1992) (collecting cases). Prison officials also cannot expose prisoners to conditions that may pose an unreasonable risk of serious damage to the prisoners' future health. *Alster*, 745 F. Supp. 2d at 335 (citing *Phelps*, 308 F.3d at 185).

Defendants concede, for the purposes of this motion, that Plaintiff has sufficiently alleged the objective element of an Eighth Amendment claim. In support of dismissal, however, they claim that Plaintiff's allegations are insufficient to establish that the Defendants acted with deliberate indifference to Plaintiff's health or safety. To establish the subjective element of an Eighth Amendment claim, a plaintiff must demonstrate that each of the individual defendants "act[ed] with

a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted). The Court will address each Defendant in turn.

1.    Administrative Remedies Coordinator Kopacz

Plaintiff's allegations regarding Kopacz are based on Kopacz's rejection of Plaintiff's ADA appeal. *See* Doc. 19 ¶ 10. Plaintiff alleges that the appeal was rejected because an ADA appeal may only be filed after a decision has been rendered by the ADA Coordinator, pursuant to Administrative Directive 9.6. *Id.* In signing the appeal, Plaintiff alleges that Kopacz informed Plaintiff that he had exhausted his administrative remedies, "which was done to create impediments in the plaintiff's quest to obtain remedial." *Id.* (sic). Defendants contend that these allegations are insufficient to establish that Kopacz acted with deliberate indifference. Plaintiff argues that deliberate indifference has been alleged, in that Kopacz not only rejected the appeal, but erroneously indicated that Plaintiff had exhausted his administrative remedies, and did so with a "culpable state of mind to deprive the plaintiff of redress in obtaining ADA accommodations." Doc. 40 at 9.

The Court finds that Plaintiff has alleged sufficient facts to establish an Eighth Amendment claim for deliberate indifference to Plaintiff's health and safety against Kopacz. Although Plaintiff alleges that Kopacz denied the appeal on procedural grounds, he claims that Kopacz then deliberately misinformed Plaintiff that he had exhausted his administrative remedies, in an effort to thwart Plaintiff's attempt to obtain shower accommodations. Reading the Second Amended Complaint liberally, Plaintiff has stated a plausible Eighth Amendment claim against Kopacz. Accordingly, Defendants' motion to dismiss the Eighth Amendment claim against Kopacz will be denied.

2.    Warden Maldonado

Defendants argue that Plaintiff's Eighth Amendment claim against Warden Maldonado must

be dismissed, as supervisory liability cannot lie where there is no underlying constitutional violation by a subordinate. Plaintiff contends that despite his awareness that Plaintiff had a physical disability and that he had not exhausted his administrative remedies, Maldonado consciously disregarded a risk to Plaintiff's health and safety by misleading Plaintiff and by failing to ensure that Plaintiff was evaluated for ADA accommodations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks and citation omitted); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (same).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright*, 21 F.3d at 501).

Plaintiff's claim against Maldonado is based on the sole allegation that his signature appears on Plaintiff's ADA appeal denial. *See* Doc. 19 ¶ 10. This bare allegation is insufficient to establish that Maldonado acted with deliberate indifference to Plaintiff's health and safety. "[A]n administrator's response to a medical issue is insufficient to establish deliberate indifference if the administrator himself never provided medical care, since prison administrators may defer to medical staff regarding medical treatment of inmates." *Lewis v. Cunningham*, No. 05-CV-9243(GBD/RLE), 2011 WL 1219287, at *5 (S.D.N.Y. Mar. 14, 2011) (internal citation omitted), *aff'd*, 483 F. App'x

617 (2d Cir. 2012). Further, "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca*, No. 01-CV-5178(KMK), 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007); *see also Joyner v. Greiner*, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) ("The fact that the Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant." (quotation marks and citation omitted)).

The Second Amended Complaint does not state facts which, if proven true, would show that Maldonado was personally involved in the allegedly unconstitutional conduct that forms the basis of Plaintiff's Eighth Amendment claims, or that Maldonado acted with deliberate indifference to Plaintiff's health and safety. Accordingly, Plaintiff's Eighth Amendment claim against Maldonado will be dismissed.

3.    <u>Dr. Wright</u>

Defendants move to dismiss the Eighth Amendment claim against Dr. Johnny Wright, contending that his alleged conduct does not rise to the level of deliberate indifference. In response, Plaintiff argues that Dr. Wright's failure to deem Plaintiff eligible for a reasonable accommodation amounted to recklessness, in light of Dr. Wright's knowledge of Plaintiff's impairment. Plaintiff's Second Amended Complaint alleges that Dr. Wright observed Plaintiff's leg injury and agreed that Plaintiff suffered from a physical impairment, but nevertheless informed Plaintiff that he did not meet the requirements for specialized housing. Further, without treating or examining Plaintiff's leg or ankle, and without recording the aforementioned interaction, Dr. Wright then went on to provide

information that resulted in the denial of Plaintiff's ADA accommodation request. Wright further offered to retroactively log the interaction he had with Plaintiff so as to formalize it.

Defendants characterize the allegations against Dr. Wright as a simple disagreement over medical treatment. This argument is misplaced. Plaintiff's case centers on the claim that he was denied access to the showers as a result of a serious impairment. According to Plaintiff's allegations, Dr. Wright's actions were integral to that denial; he falsely told Plaintiff that his injuries were insufficient to warrant accommodations. He then is alleged to have provided this same false information to other officials, who, in turn, used it to justify the denial of Plaintiff's request.

The Court agrees with Plaintiff that such allegations are sufficient to establish a claim that Dr. Wright acted with deliberate indifference. Accordingly, Defendants' motion to dismiss the Eighth Amendment claim against Defendant Dr. Wright will be denied.

4.     Deputy Warden Wright

Plaintiff's Second Amended Complaint alleges that Deputy Warden Wright: 1) failed to respond to Plaintiff's inmate request in December 2016, requesting a transfer to a different housing unit; and 2) signed off on the denial of Plaintiff's Request for Reasonable Accommodations in February 2017. Defendants seek dismissal of the Eighth Amendment claim alleged against Deputy Warden Wright, arguing that Plaintiff's allegations are insufficient to show that Deputy Warden Wright was personally involved in any constitutional deprivation. The Court agrees.

First, to establish the personal involvement of a supervisor for the purposes of a section 1983 claim, Plaintiff must do more than allege that the supervisor received a grievance or request and failed to act on it. *See Garcia v. Doe*, No. 3:17-CV-2068(JCH), 2018 WL 295795, at *4 (D. Conn. Jan. 4, 2018) ("Failure to respond to a complaint is insufficient to show the personal involvement

of a supervisory official." (citations omitted)); *see also Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (noting that a number of courts have held that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations" (collecting cases)). Thus, without more, Plaintiff's first allegation is insufficient to establish that Deputy Warden Wright was personally involved in the constitutional deprivation here alleged.

Second, as discussed *supra*, in a section 1983 claim, to show the personal involvement of a supervisory official, Plaintiff must allege more than the mere fact that the supervisor's signature appears on the denial of a grievance or complaint. *See Lewis*, 2011 WL 1219287, at *5 (finding that without more, a supervisor's signature on a grievance cannot demonstrate personal involvement). Here, Plaintiff alleges that his Request for Reasonable Accommodations, signed by both Furey and Deputy Warden Wright, was denied based on Dr. Wright's review; this allegation does not establish that Deputy Warden Wright acted with deliberate indifference to Plaintiff's health and safety. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) ("[Superintendent's] automatic and complete deference to the very decision [Plaintiff] grieved is not, by itself, sufficient evidence that [Superintendent] was deliberately indifferent to [Plaintiff]'s serious medical needs.").

As the allegations in the Complaint fail to support the subjective element of an Eighth Amendment claim against Deputy Warden Wright, any such claim against him will be dismissed.

## C.    ADA Claims

### 1.    Individual Defendants

Green's Second Amended Complaint raises several claims pursuant to the ADA against the DOC and the individually named Defendants. As discussed in the Court's prior Ruling, it is well

settled that Title II of the ADA does not authorize actions against state officials in their individual capacities. *See Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir.2005) ("Title II of that statute does not provide for individual capacity suits against state officials." (citation omitted)); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir.2001).

Here, Green has named the individual Defendants in their official and individual capacities. Accordingly, to the extent Green has attempted to plead any ADA individual capacity claims, such claims must be dismissed. Further, "[w]here, as here, a plaintiff may proceed on his ADA claims against the State entity directly, courts in this Circuit dismiss the official capacity claims because they are redundant of the claims against the government entity." *Alster v. Goord*, 745 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (quotation marks and citation omitted) (collecting cases). As Green has named the DOC, there is no need for Green to proceed on his ADA claims against the individual Defendants in their official capacities. Accordingly, those claims will be dismissed.

2.    DOC

The Court previously provided leave for Plaintiff to amend his Complaint to assert his ADA claims against the DOC. *See* Doc. 10 at 12. In so doing, the Court noted that Plaintiff's original Complaint lacked sufficient detail as to the nature of his impairment for the Court to determine whether he had adequately pled that he is a qualified individual under the ADA. The Court directed Plaintiff to add allegations supporting the elements of his ADA claim, should he choose to amend his Complaint.

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."42

U.S.C. §12132. To state a claim under the ADA, Plaintiff must allege: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003) (quoting 42 U.S.C. § 12132). A 'qualified individual' is statutorily defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C.A. § 12131(2). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quotation marks and citation omitted).

Defendants argue that Plaintiff's ADA claims fail because he has not asserted an Eighth Amendment violation and because he does not have a disability as defined by the ADA. Defendants' first argument is without merit, as the Court has already determined that Plaintiff has alleged a plausible Eighth Amendment claim. Defendants' second argument is also deficient.

A disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities. . . ." 42 U.S.C § 12102(1)(A). A major life activity "is one that is of central importance to daily life," *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (quotation marks and citation omitted), and includes "caring for oneself, . . . standing, lifting, [and] bending." 42 U.S.C. § 12102(2)(A).

Plaintiff alleges that his leg had been injured in a car accident in 2008, resulting in "very

limited range of motion in his ankle." Doc. 19 ¶16. As a result, walking and lifting his legs is difficult. *Id.* Plaintiff alleges that "on a number of occasions," he was unable to shower as a result of his injury. *Id.* At this stage in the litigation, such allegations are sufficient to show that Plaintiff has a qualifying disability under the ADA.[3] Accordingly, Defendants' motion to dismiss Plaintiff's ADA claims will be granted as to the individual Defendants, and denied as to the DOC.

## C.     Qualified Immunity

Finally, Defendants contend that they are entitled to qualified immunity for the Eighth Amendment claim alleged against them. The Court has already determined that Plaintiff's claims against Maldonado and Deputy Warden Wright will be dismissed; thus, this argument will be considered as to the remaining individual Defendants: Kopacz and Dr. Wright.

"A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was clearly established at the time of the challenged conduct." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quotation marks and citation omitted). Qualified immunity "covers mere mistakes in

---

[3] In support of the motion to dismiss Green's ADA claims, Defendants contend that there "is *no evidence*" that Green's impairment substantially limits his major life activities, Doc. 31-1 at 16 (emphasis added), and argue that previously, Green "has admitted to playing basketball," citing allegations in a separate, unrelated lawsuit. *Id.* To consider this evidence outside the pleadings would convert this motion into one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, a course of action the Court does not elect to take. "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). In advancing an argument based on evidence, or lack thereof, Defendants improperly seek to change the focus of their motion from the feasibility of the claims in the Second Amended Complaint to its substantive merits. To consider and rely on external material that contradicts the allegations in the Second Amended Complaint would be improper at this stage of the lawsuit.

judgment, whether the mistake is one of fact or one of law." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quotation marks and citation omitted).

A defendant may assert a successful qualified immunity defense on a Rule 12(b)(6) motion to dismiss where "facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quotation marks and citations omitted). "Although courts should resolve the question of qualified immunity at the earliest possible stage in litigation, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Walker*, 717 F.3d at126 (quotation marks and citations omitted).

Here, Defendant argue that the law "governing [D]efendant's actions" is not clearly established, Doc. 31-1 at 17. Defendants also contend that their conduct was objectively reasonable, and that Defendants did not violate Plaintiff's rights. Specifically, Defendant Dr. Wright argues that he is entitled to qualified immunity because a difference in opinion regarding appropriate medical care does not qualify as an Eighth Amendment violation. *See* Doc. 31-1 at 19. [4] Likewise, Defendant Kopacz argues that the conducted attributed to him by Plaintiff is "lawful." *Id.*

Defendants have not established that they are entitled to qualified immunity on the basis of

---

[4] Defendant Wright also posits an argument regarding pain medication that does not apply to the facts alleged in this matter. *See* Doc. 31-1 at 19 ("No authority can be argued to establish that an inmate has a right to choose their pain medication." (sic)). The Court assumes the inclusion of this argument and law in Defendants' brief is a cut-and-paste error and will therefore not address the merits of this inapplicable section.

the allegations in the Second Amended Complaint. As discussed above, Plaintiff has alleged plausible claims against Kopacz and Dr. Wright for violations of his Eighth Amendment right to be free from inhumane conditions in prison. Plaintiff claims that Kopacz deliberately gave him erroneous information regarding the status of his appeal so as to impede Plaintiff's efforts to obtain an accommodation so that he could shower. Dr. Wright is alleged to have intentionally or recklessly determined that Plaintiff was not eligible for an accommodation, and then conveyed such false information, resulting in the denial of Plaintiff's request. Without additional information, the Court cannot determine whether it was objectively reasonable for Defendants to believe that they had not acted with deliberate indifference to Plaintiff's rights. A finding of qualified immunity as to either of these Defendants would require the Court to draw inferences in favor of Defendants, which would be inappropriate on this motion to dismiss.

On the basis of the allegations of the Second Amended Complaint, it would be premature to find that the Defendants are entitled to qualified immunity. *See, e.g.*, *Walker*, 717 F.3d at 130 (2d Cir. 2013) (denying motion to dismiss on the grounds of qualified immunity, because "further facts are required to decide: the question of qualified immunity"); *Rogers v. Salius*, No. 3:16-CV-1299(JCH), 2017 WL 1370695, at *8 (D. Conn. Apr. 13, 2017) (denying motion to dismiss on the grounds of qualified immunity as premature, where there were disputed issues of fact as to an inmate's Eighth Amendment claims); *Alston v. Bellerose*, No. 3:12- CV-00147(CSH), 2015 WL 4487973, at *13 (D. Conn. July 23, 2015) ("Because the Court must assume at this stage in the proceedings that Defendants' actions were motivated by retaliatory animus, the Court cannot conclude that Defendants' conduct was objectively reasonable. Accordingly, Defendants are not entitled to qualified at immunity at this point in the proceedings.").

Accordingly, Defendants' motion to dismiss on the basis of qualified immunity will be denied without prejudice to raising the defense again at a later stage of the litigation.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss* is GRANTED in part and DENIED in part. Specifically:

1.   Defendants' Motion to Dismiss the § 1983 claims against Defendants Maldonado and Deputy Warden Wright is GRANTED. Plaintiff's § 1983 claims based on the Eighth Amendment are **DISMISSED** against Defendants Maldonado and Deputy Warden Wright, and are **DISMISSED** against all individually named Defendants in their official capacities.

2.   Defendants' Motion to Dismiss the ADA claims against Defendants Maldonado, Kopacz, Deputy Warden Wright and Dr. Wright is GRANTED. Plaintiff's ADA claims are **DISMISSED** against the individually named Defendants in their individual and official capacities.

3.   Defendants' Motion to Dismiss on the basis of qualified immunity is DENIED, without prejudice to renewal.

4.   Defendants' Motion to Dismiss the § 1983 claims against Defendants Dr. Wright and Kopacz is DENIED. The Motion to Dismiss the ADA claims against the DOC is DENIED. The Second Amended Complaint **WILL PROCEED** against Defendants Kopacz and Dr. Wright in their individual capacities for a violation of Plaintiff's Eighth Amendment rights, pursuant to § 1983, and against the DOC for a violation of the ADA.

4.   As the deadlines for discovery and dispositive motions have elapsed, the Court hereby enters the following Scheduling Order: All discovery shall be completed on or before **December 3, 2018**. Any dispositive motions must be filed on or before **January 4, 2019.** The parties' Joint Trial

Memorandum, as required by the Standing Order on Trial Memoranda in Civil Cases will be due on or before **March 4, 2019**, or within sixty days after the Court rules on the last-filed dispositive motion, whichever is later. The case will be trial ready on **April 4, 2019**, or within thirty days after the joint trial memorandum is filed, whichever is later.

      **It is SO ORDERED.**

Dated: New Haven, Connecticut
      June 6, 2018

                 */s/ Charles S. Haight, Jr.*
                 CHARLES S. HAIGHT, JR.
                 SENIOR UNITED STATES DISTRICT JUDGE